UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 4:13 W1 22 JAR |
| v. | ) | |
| | ) | |
| DARRIN LANDES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**THE GOVERNMENT'S RESPONSE TO DEFENDANT'S MEMORANDUM IN SUPPORT OF REQUEST FOR DOWNWARD DEPARTURE FROM U.S. SENTENCING GUIDELINES**

COMES NOW, the United States of America, by Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Anthony L. Franks, Assistant United States Attorney for said District and in response to the defendant Darrin Landes' Memorandum in Support of Request for Downward Departure from U.S. Sentencing Guidelines states as follows:

**I.   Introduction**

The defendant Darrin Landes (defendant) engaged in a scheme that defrauded 47 individuals out over $120,000 they paid defendant to attend sporting events such as St. Louis Cardinals and St. Louis Blues games, and the Masters Golf Tournament in Augusta, Georgia. Defendant now requests a sentence of either probation or 5 years supervised release as punishment for his crime.   In light of the facts of this case, a sentence within the recommended guideline range of 21 – 27 months imprisonment would reflect the seriousness of the Defendant's misconduct,

promote respect for the law and deter others considering similar misconduct.

**II.      Background**

From about June 2012 until about April 2013, defendant defrauded numerous people out of money that they sent to defendant to purchase tickets to various sporting events.  (*See* Doc. 8 (Guilty Plea Agreement), p. 3, and Presentence Investigation Report (PSR), ¶  11.   Defendant perpetrated his fraud by advertising on Craigslist that he was selling tickets to the Masters Golf Tournament, St. Louis Cardinals games, and St. Louis Blues games. *Id.*     Defendant also responded to others who advertised that they were looking to purchase these tickets. PSR, ¶  13.  Defendant also offered to sell accommodations at these sporting events. *Id.*      A number of people contacted defendant and agreed to send him money for these tickets and accommodations. (Guilty Plea Agreement, p. 3)   Defendant then either had his victims send the money directly to him by wire, or they were directed by defendant to wire the money to one of defendant's associates, either J.L or J.D. PSR, ¶ 13.   In some instances, defendant sent confirmation emails or a copy of his driver's license to convince individuals to send payment. Defendant also falsely claimed affiliation with different companies and organizations to further his scheme. *Id.*

Defendant convinced his friend J.L. to accept payments for these tickets by through J.L. and J.L.'s wife's PayPal accounts. Defendant told J.L. that he was selling tickets to sporting events, but needed the payments to go to J.L.'s account to prevent the Internal Revenue Service (IRS) from intercepting payments to defendant because he owed money to the IRS. PSR, ¶ 12. Numerous people transferred money to J.L. and J.L. wife's accounts for purchase of tickets to the 2013 Master Golf Tournament.   PSR, ¶ 12. J.L. then provided the money to defendant. *Id.*

Defendant also used his business acquaintance's (J.D.) credit union account to accept money from those who wanted to purchase sporting event tickets from defendant.   PSR, ¶  14.

2

Once defendant received money for the tickets, he failed to send the purchasers the sporting event tickets.   PSR, ¶ 14.   The purchases attempted to contact defendant about their tickets, but defendant would either avoid their calls or give them false reasons why the tickets had not been received. PSR, ¶ 14.   Purchasers also contacted J.L. regarding the status of their tickets. In some instances they filed complaints with PayPal against J.L. because they did not receive the tickets defendant agreed to send. PSR, ¶  12.

On March 25, 2013, J.L. contacted the Ballwin Police Department and reported defendant's online scam.   PSR, ¶ 12.   On October 28, 2013, after further investigation by the Ballwin Police Department and the Federal Bureau of Investigation (FBI), defendant waived indictment and pled guilty to a two-count Information that charged Wire Fraud, in violation of Title 18 U.S.C. § 1343.   PSR, ¶  1.

Further investigation has determined that defendant defrauded 47 victims in this case. They have suffered a loss of $126,960. PSR, ¶¶  11, 19.   Defendant has not refunded these victims their money, and, therefore restitution in the amount of $126, 960 is due and owing to them. PSR, ¶ 86.

The Presentence Report has calculated a guideline range of   21 months to 27 months. PSR ¶ 44.

III.     **Argument**

    a. **Nature and Circumstances of the Offense**

Title 18, United States Code, Section 3553(a) sets out the factors this Court should consider in fashioning an appropriate sentence.    The first such factor to be considered is the nature and circumstances of the offense. 18 U.S.C. 3553(a)(1).

This case presents an online theft scheme whereby the defendant defrauded and caused substantial financial injury to numerous individuals who sought to purchase sporting good tickets

3

from defendant.  PSR, ¶ 11.  As outlined above, defendant's scheme spanned from June 2012 to April 2013, and it involved the use of Craigslist; the internet and emails; wires of money to defendant from his victims; and wires of money to defendant's friend and acquaintances. PSR, ¶¶ 11 – 14.  With an apparent great amount of effort, defendant was able to swindle 47 people out of $126, 960. PSR, ¶ 86.  These victims have nothing to show for the thousands of dollars that they sent to defendant as he sent them nothing in return for their money.

The defendant admits to knowingly violating Title 18 U.S.C. § 1343 (Wire Fraud) and admits that he used the money he stole from his victims for his own living expenses, and to fund his gambling and alcohol addictions. PSR, ¶ 14.

   b.  **History and Characteristics of Defendant**

In his sentencing memorandum, the defendant highlights that at a very early phase of the investigation in this case, on April 2, 2013, his counsel contacted the Ballwin Police Department regarding defendant.   Def. Sent. Memo. at 4.  Defendant also emphasizes that he was admitted in an intensive treatment program on April 2, 2013 and has transitioned to an intensive outpatient program to treat major depressive disorder and alcohol dependence. Def. Sent. Memo, Ex. A.  These, of course, are factors to the defendant's credit.

The Government notes, however, that defendant only began to cooperate with investigators in this case after defendant's friend, J.L., notified the Ballwin Police Department about defendant's scheme.  PSR ¶ 12.  For defendant's acceptance of responsibility in this case, he is receiving a 3 level reduction in his offense level.  PSR, ¶¶ 32, 33.  No more leniency should be provided defendant for accepting responsibility after he was caught committing the crimes here.

In regards to his treatment for his mental condition, alcohol dependency, and his history of emotional abuse by his father (alleged at ¶ 45 of the PSR), defendant suggests that his condition

should support a downward variance from the guideline range established in this case. Def. Sent. Memo. at 6. U.S.S.G. Sections 5H1.3 and 5H1.4 address these issues, and state that a defendant's mental or physical condition is relevant in determining whether a departure is warranted only where the condition is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. Defendant's conditions, some of which apparently have been exacerbated by his conduct in this case, are not unusual, are not present to an unusual degree, and do not distinguish this case from other defendants with similar health issues. *See U.S. v. Harris*, 493 F.3d 928, 932 (8th Cir. 2007)(district court did not err in concluding that defendant's condition did not make him "terribly unusual" so as to justify a downward departure where defendant presented evidence at sentencing of limited intellectual functioning and a psychiatric disorder.) *See also U.S. v. Bowie*, No. 05-CR-77-LRR, 2006 W.L. 26992230,*9 (N.D. Iowa)(in refusing to depart downward based on the mental and emotional condition of the defendant, the court found that "Defendant's history of abuse, while unfortunate, is fairly common among federal criminal defendants. There was nothing about how Defendant's father treated him that took Defendant's case outside the heartland of cases.")

U.S.S.G. Section 5H1.4 also discourages the use of a defendant's alcohol dependence as a basis for a departure and specifically states that ". . . alcohol dependence or abuse ordinarily is not a reason for a downward departure. Substance abuse is highly correlated to an increased propensity to commit crime." In fact, defendant's criminal history reflects that since 2005, defendant has been convicted twice with alcohol related offenses – 1) reckless driving in 2005 where defendant failed a sobriety test; and 2) driving while intoxicated in 2006. PSR, ¶¶ 38, 40. Thus, it is no surprise here that defendant may abuse alcohol. Nonetheless, under the circumstances here, this is no basis for a downward departure from defendant's guideline

sentence. If anything, defendant's alcohol related offenses present an argument for the need to impose a stiff sentence to protect the public from defendant.

**IV.    A Guideline Sentence Would Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense**

Wire fraud is a serious offense and the sentencing guidelines reflect the seriousness of the crime. The maximum penalty provided by law for wire fraud is imprisonment of not more than 20 years, a fine of not more than $250,000, or both. The Court may also impose a period of supervised release of not more than 3 years. A sentence within the advisory guideline range will reflect the illegal nature of the defendant's conduct and the importance of recognizing that such conduct should not be condoned on any level, especially when it involves so many victims as it does here. Moreover, a sentence within the advisory guideline range will encourage respect for the law by demonstrating that those in violation of the law will be justly punished.

**V.    A Guideline Sentence Will Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant**

The defendant is a 43 year-old offender with a sporadic educational history and an unstable employment record. PSR ¶ ¶ , 56-57, 61-69. The defendant's scheme to defraud required maintenance and continued effort in that it involved a series of communications, use of his friends and their accounts, and the scheme occurred through back-and-forth dialogue with 47 victims, rather than a more impulsive single communication transaction. Based upon all of defendant's conduct in this case, a stiff sentence is necessary to adequately deter defendant and protect the public from further crimes of the defendant.

Moreover, with the emergence of online commerce, stiff prison sentences are necessary

to reduce or eliminate fraud committed through the internet and to prevent individuals like defendant from preying on those who engage in online commerce.   *See U.S. v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting Stephanos Bibas, *White-Collar Plea Bargaining and Sentencing After Booker,* 47 Wm. & Mary L.Rev. 721, 724 (2005)) ("Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.'"). A strong sentence in this case will send a powerful message to defendant and others who prey on individuals in online scams.   On the other hand, a light sentence would encourage potential offenders because they would reason that, even if caught, they would not face a serious punishment.

V.     **Conclusion**

Considering all the factors listed in Section 3553(a), the guideline sentence for the defendant is reasonable.   For the foregoing reasons, the Government respectfully requests that the Court sentence the defendant to a term of imprisonment between 21 and 27 months.

        Respectfully submitted,

        RICHARD G. CALLAHAN
        United States Attorney

        */s/ Anthony L. Franks*
        ANTHONY L. FRANKS, #50217MO
        Assistant United States Attorney
        111 South 10th Street, Room 20.333
        St. Louis, Missouri   63102
        (314) 539-2200

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2014, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system to the following, and that the same document was emailed to the Mr. Pennington and the Court on January 24, 2014 as the Court's electronic filing system was not operational:

Francis E. Pennington, III
106 West Madison Avenue
Suite 200
St. Louis, MO 63122

 */s/ Anthony L. Franks*
ANTHONY L. FRANKS, #50217MO
Assistant United States Attorney